## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

PHILLIP PAUL MORRISON,      )
     )
            Petitioner,      )
     )
v.      )      **Case No. 17-CV-0088-JED-FHM**
     )
LUKE PETTIGREW,[1]      )
     )
            Respondent.      )

### OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. 1) filed by Petitioner Phillip Paul Morrison, a state prisoner who appears *pro se*. Respondent filed a response (Doc. 7) in opposition to the petition, and provided records (Docs. 7, 8, 9) from state court proceedings necessary to adjudicate Petitioner's claims. Petitioner filed a reply (Doc. 10). On consideration of the case materials and for the reasons that follow, the Court concludes that this matter can be resolved without an evidentiary hearing, concludes that Petitioner is not entitled to federal habeas relief, and denies the petition for writ of habeas corpus.

### *BACKGROUND*

Petitioner seeks federal habeas relief from the judgment and sentence entered against him in the District Court of Washington County, Case No. CF-2014-155. Doc. 1, *Petition*, at 1.[2] In that case, a jury convicted Petitioner of Lewd Acts with a Child under Sixteen (Count 1), in

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Luke Pettigrew, the current warden of the Joseph Harp Correctional Center, in place of Carl Bear as party respondent. The Clerk of Court shall note this substitution on the record.

[2] For consistency, the Court's citations refer to the CM/ECF header pagination.

violation of Okla. Stat. tit. 21, § 1123(A)(2) (2011); First Degree Rape (Count 3), in violation of

Okla. Stat. tit. 21, § 1114(A)(1) (2011); and Sodomy (Count 4), in violation of Okla. Stat. tit. 21,

§ 888(B)(1), each after former conviction of a felony.[3]  Doc. 7-3, *Morrison v. State*, No. F-2015-

302 (Okla. Crim. App. Apr. 1, 2016) (unpublished) (hereafter, "OCCA Op."), at 1.  The jury

recommended a sentence of life without the possibility of parole for each conviction, and the trial

court sentenced Petitioner accordingly.  *Id.*

      Represented by counsel, Petitioner filed a timely direct appeal in the Oklahoma Court of

Criminal Appeals (OCCA).  Doc. 7-3, *OCCA Op.*, at 1-2.  The OCCA summarized the facts

underlying Petitioner's convictions as follows:[4]

> From August 2012 until August 2013, [Mother] lived in a house on her parents'
> property south of Bartlesville with her two children, C.N. and L.N.  In between
> June 30, 2013 and August 20, 2013, when C.N. was eight years old, [Petitioner]
> started visiting [Mother] at her house.  [Petitioner] and [Mother] had known each
> other from school and had recently renewed their friendship.  During this time
> [Mother] was taking drugs that affected her ability to care for her children.

> On August 23, 2013, C.N. and L.N. were removed from [Mother's] custody and
> placed in foster care with [Cousin].  On March 10, 2014, after a visit with [Mother]
> at D.H.S., C.N. told [Cousin] about incidents of sexual abuse [Petitioner]
> committed upon him when he lived with [Mother].  About one month later, after
> confirming that [Petitioner] was in jail, C.N. told [Cousin] about other incidents of
> sexual abuse he had suffered at [Petitioner's] hands.  [Cousin] reported both
> disclosures to D.H.S.

---

[3] The jury acquitted Petitioner of Lewd Acts with a Child under Sixteen (Count 2).  Doc. 7-3, *OCCA Op.* at 1 n.1.

[4] On habeas review, a federal court presumes the correctness of a state court's factual findings unless the petitioner rebuts those findings by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner does not attempt to rebut the OCCA's factual findings and, following review of the state-court record, the Court finds the following factual summary from the OCCA's decision to be accurate and adequate.  The OCCA's decision appropriately refers to the minor victim by initials only.  However, to provide additional privacy, the Court will refer to the victim's mother as "Mother" and the adult cousin who provided foster care for him as "Cousin," throughout this opinion.  The Court will develop additional facts in the analysis section as necessary to adjudicate Petitioner's claims.

> At trial, C.N. testified that [Petitioner] touched his "wiener" more than once with his hand.  He also testified that [Petitioner] put his "wiener" in C.N.'s mouth and in his butt.  He testified that this hurt and that [Petitioner] told him that if he told anyone [Petitioner] would hurt him and kill [Mother].

Doc. 7-3, *OCCA Op*., at 2-3.  Petitioner raised nine claims on direct appeal.  *Id.* at 1-2.  In an unpublished opinion filed April 1, 2016, in Case No. F-2015-302, the OCCA rejected each claim on the merits and affirmed Petitioner's judgment and sentence.  *Id.* at 1-23.  Petitioner did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court.  Doc. 1, *Petition*, at 2.  Petitioner also did not pursue postconviction remedies in state court.  *Id.* at 4; Doc. 7, *Response*, at 2.

Appearing *pro se*, Petitioner filed the instant federal habeas petition on February 17, 2017.  Doc. 1, *Petition*, at 1.  He seeks federal habeas relief on the same nine claims he asserted on direct appeal.  *Id.* at 6-16; *see* Doc. 7-3, *OCCA Op*., at 1-2.  Respondent urges the Court to deny the habeas petition.  Doc. 7, *Response*, generally.

## *DISCUSSION*

A federal court has authority to grant federal habeas relief to a prisoner in custody pursuant to a state-court judgment "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes additional limits on a federal court's authority to grant habeas relief to a state prisoner.  As relevant here, when the prisoner has properly presented a federal claim in state court and the state court has adjudicated that claim on the merits, a federal court may grant habeas relief on that claim only if the prisoner first demonstrates that the state court's adjudication of that claim "resulted in a decision that" either (1) "was contrary to . . . clearly

3

established Federal law," 28 U.S.C. § 2254(d)(1),[5] (2) "involved an unreasonable application of clearly established Federal law," *id.*, or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Even if a state prisoner satisfies § 2254(d)'s standards as to any federal claims that were adjudicated in state court, the prisoner is not necessarily entitled to federal habeas relief. Rather, the prisoner is merely entitled to have the federal habeas court review his federal claims de novo. *See Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014) (explaining that satisfaction of § 2254(d)'s standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [a federal habeas court] to review de novo" petitioner's claims). And, even if the federal court's independent review reveals a constitutional error, the court still "must assess [the error's] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). Under the *Brecht* standard, a federal court will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects substantial rights." *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

As previously stated, Petitioner seeks federal habeas relief on the same nine claims he presented to the OCCA on direct appeal:

---

[5] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

- Ground one:  The trial court erred in failing to comply with Okla. Stat. tit. 22, § 894 before allowing the jury to view the videotape of C.N.'s forensic interviews during jury deliberations.

- Ground two:  The trial court erred by explaining to the jury why a witness was unavailable to testify.

- Ground three:  Prosecutorial misconduct deprived Petitioner of a fair trial.

- Ground four:  The introduction of other crimes evidence deprived Petitioner of a fair trial.

- Ground five:   The trial court erred in admitting a witness statement that was more prejudicial than probative.

- Ground six:  The trial court erred in failing to hold a reliability hearing as required by Okla. Stat. tit. 12, § 2803.1.

- Ground seven:  The evidence was insufficient to support Petitioner's convictions.

- Ground eight:  The erroneous admission at trial of information about pardon and parole requires modification of his sentence.

- Ground nine:  The cumulative effect of trial errors deprived Petitioner of a fair trial.

Doc. 1, *Petition*, at 6-16.

Respondent urges the Court to deny Petitioner's request for habeas relief.  Respondent contends the claims Petitioner asserts in grounds one, two, four, five, six and eight allege state-law errors arising from the trial court's rulings on evidentiary issues and thus fail to present cognizable federal habeas claims.  Doc. 7, *Response*, at 7.  Alternatively, Respondent contends, to the extent Petitioner claims the trial court's evidentiary rulings violated his right to due process by depriving him of his constitutional right to a fair trial, he has not established any due process violations.  *Id.* at 8-32.  As to the claims Petitioner asserts in grounds three, seven and nine, Respondent contends

28 U.S.C. § 2254(d) bars habeas relief because the OCCA's adjudication of those claims did not result in a decision that is based either on an unreasonable application of federal law or on an unreasonable determination of the facts.

As a preliminary matter, the Court agrees that the claims Petitioner asserts in grounds one, two, four, five, six and eight raise matters of state law that are not cognizable on federal habeas review. *See Wilson*, 562 U.S. at 5 (noting that a federal habeas court's concern is noncompliance with federal law). Nonetheless, a federal habeas court may review an alleged state-law evidentiary error to determine "if the alleged error was 'so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration in original) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)). The Court will therefore consider whether the state-law evidentiary errors alleged in grounds one, two, four, five, six and eight deprived Petitioner of a fair trial. However, "'because a fundamental-fairness analysis is not subject to clearly definable legal elements,' when engaged in such an endeavor a federal court must 'tread gingerly' and exercise 'considerable self-restraint.'" *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (alteration in original) (quoting *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1990)). And, to the extent the OCCA applied federal law in addressing the merits of any claims, the Court's review is further constrained by § 2254(d).

## I.      Ground one:  failure to comply with Okla. Stat. tit. 22, § 894

Petitioner claims the trial court failed to follow the requirements of Okla. Stat. tit. 22, § 894 when it responded to the jury's request to view a trial exhibit—specifically, a DVD depicting C.N.'s videotaped forensic interviews—during jury deliberations. Doc. 1, *Petition*, at 6; Doc. 7-

6

1, *Pet'r App. Br.*, at 9-10.[6]

The OCCA reviewed his claim for plain-error and denied relief.  Doc. 7-3, *OCCA Op.*, at

3.  The OCCA first cited Okla. Stat. tit. 22, § 894, which provides, verbatim:

> After the jury have retired for deliberation, if there be a disagreement between them
> as to any part of the testimony or if they desire to be informed on a point of law
> arising in the cause, they must require the officer to conduct them into court.  Upon
> their being brought into court, the information required must be given in the
> presence of, or after notice to the district attorney and the defendant or his counsel,
> or after they have been called.

The OCCA further noted that "[b]efore allowing the taped testimony to be replayed for the

jury, a trial court is required to determine the 'exact nature of the jury's difficulty, isolate the

precise testimony which can solve it, and weigh the probative value of the testimony against the

danger of undue emphasis.'"  Doc. 7-3, *OCCA Op.*, at 4 (quoting *Martin v. State*, 747 P.2d 316,

320 (Okla. Crim. App. 1987).  Applying *Davis v. Washington*, 547 U.S. 813, 822 (2006), the

OCCA determined that the statements from C.N.'s recorded forensic interviews were testimonial

and should not have been replayed during jury deliberations without the trial court first taking the

precautions required by section 894."  Doc. 7-3, *OCCA Op.*, at 4-5.  The OCCA thus found that

the trial court's "failure to follow the requirements of section 894 was  actual, obvious error."  Doc.

7-3, *OCCA Op.*, at 5.   But the OCCA found the error "did not affect the outcome of the

proceeding."  *Id.*  The OCCA reasoned, "The jury was not allowed unrestricted viewing of the

videotaped interview during deliberations but rather was allowed to view the interviews one

additional time in the presence of the defendant and counsel in the controlled environment of the

courtroom."  *Id.* at 5.  The OCCA thus concluded that because the error was "not prejudicial" it

---

[6] Because Petitioner appears *pro se*, the Court must liberally construe his petition and reply
brief.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991).  In an effort to discern his arguments, the
Court refers to the arguments from the brief he filed in state court on direct appeal (Doc. 7-1), and
will cite that brief as "Pet'r App. Br.," using the CM/ECF header pagination.

"was harmless." *Id.*

Though his argument is not clear, Petitioner appears to take issue with the OCCA's harmless-error analysis. Doc. 1, *Petition*, at 6. He states: "Applying the Supreme Court *Brecht v. Abrahamson* whether error had substantial and injurious effect or Influence in determining Jury's verdict, rather than whether error was harmless beyond a reasonable doubt? The errors considered in the cumulative rises to a level of plain error."[7] *Id.* For three reasons, the Court finds that Petitioner is not entitled to habeas relief on this claim.

First, to the extent he suggests that this Court should apply the *Brecht* analysis in reviewing his claim because the OCCA failed to apply the constitutional harmless-error test from *Chapman v. California*, 386 U.S. 18 (1967), there was no reason for the OCCA to apply *Chapman* because the error the OCCA found was a state-law error, not a constitutional error. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000) (noting that a federal court applies the *Brecht* harmless-error analysis to assess the harmlessness of a *constitutional* error "when a state court fails to apply the proper constitutional standard of harmless error" from *Chapman*).[8]

Second, because the error found by the OCCA rests on the trial court's failure to comply with state-law, the only question properly before this Court is whether the error was sufficiently serious to deprive Petitioner of due process by rendering his trial fundamentally unfair. *Revilla*, 283 F.3d at 1212. Even applying the fundamental-fairness analysis on de novo review, a federal

---

[7] Petitioner makes cumulative-error arguments in all but ground two. *See* Doc. 1, *Petition*, at 6-16. The Court will address these arguments in analyzing ground nine which asserts a cumulative-error claim. *Id.* at 16.

[8] Petitioner references the need to apply the *Brecht* analysis with respect to all nine grounds for relief. Because *Brecht* applies only if this Court finds, on de novo review, that a constitutional error occurred, the Court will address Petitioner's *Brecht* argument, with respect to any of his claims only if it (1) finds that § 2254(d) does not bar habeas relief and (2) that the error alleged violated the Constitution.

court must exercise "considerable self-restraint." *Duckett*, 306 F.3d at 999.  But here, the AEDPA further restrains the Court because the OCCA applied its plain-error standard in reviewing the trial court's failure to comply with state law.  *See Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (noting that Oklahoma's plain-error test is "rooted in due process" and that a federal court sitting in habeas must therefore apply 28 U.S.C. § 2254(d)(1)'s "unreasonable application" standard in considering the OCCA's application of that test).  Thus, the Court must defer to the OCCA's decision that the state-law error did not deprive Petitioner of due process, unless the Court finds that the OCCA's application of the plain-error standard was objectively unreasonable.  *Id.* at 1125.

The Court has reviewed the trial record and it supports the OCCA's determination that the trial court's error did not render his trial fundamentally unfair.  The record reflects that on two different occasions, C.N. told Cousin that Petitioner sexually abused him.  Doc. 8-3, *Tr. Trial vol. 2*, at 62-66.  Both times, Cousin contacted DHS.  *Id.* at 66.  Jennifer Chafin, a DHS forensic interviewer, interviewed C.N. on March 26, 2014, and April 17, 2014, and both interviews were recorded onto a DVD.  *Id.* at 103-06.  The State introduced that DVD at trial, as State's Exhibit 6.  *Id.* at 107-08.  During jury deliberations, the jury sent a note to the trial judge asking to view the DVD.  Doc. 8-3, *Tr. Trial vol. 2*, at 248-49.  Without objection, the trial court called the jury into the courtroom and stated, "I got a note that the jury wishes to view both of the Ray of Hope DVD's again.  So, Mr. Drake, if you'll start that first interview, please."  *Id.* Mr. Drake, the prosecutor, then played the DVD depicting both of C.N.'s forensic interviews for the jury.  *Id.* at 249.  After viewing the DVD once, the jury returned to the jury room to continue deliberations.  *Id.*  On this record, the Court does not find that the OCCA's application of the federal due-process standard was objectively unreasonable.  As a result, § 2254(d) bars habeas relief, and the Court denies the

petition as to ground one.

## II.   Ground two:  trial court's comment on witness's refusal to testify

Petitioner claims the trial court committed reversible error when it explained to the jury that Mother was unavailable to testify at trial because she had invoked her Fifth Amendment right against self-incrimination.  Doc. 1, *Petition*, at 7; Doc. 7-1, *Pet'r. App. Br.*, at 11-15.

On direct appeal, Petitioner argued the trial court's comments were "unnecessary, against the decisions of [the OCCA] and harmful to [Petitioner]," and deprived him of a fair trial and due process.  Doc. 7-1, *Pet'r App. Br.*, at 11-16.  The OCCA rejected Petitioner's claim on plain-error review.  In doing so, the OCCA first noted that Okla. Stat. tit. 12, § 2513 supported Petitioner's "position that claims of privilege are to be kept from the jury's knowledge at trial."  Doc. 7-3, *OCCA Op.*, at 6.  The OCCA further noted that its prior decisions supported that "section 2513 requires the claim of privilege be asserted outside the jury's presence, 'to the extent practicable.'" *Id.* at 6 (quoting *Jackson v. State*, 964 P.2d 875, 886 (Okla. Crim. App. 1998)).  And the OCCA appeared to find error, stating, "[w]hile the trial court did not explicitly tell the jury that [Mother] had invoked her Fifth Amendment right against self-incrimination, the explanation given by the court certainly alluded to this fact."  Doc. 7-3, *OCCA Op.*, at 7.  But the OCCA determined the error did not require reversal.  *Id.*  Applying *Namet v. United States*, 373 U.S. 179, 186-87 (1963), the OCCA reasoned that "the State did not build its case out of inferences arising from the use of testimonial privilege," and that Mother's "assertion of the privilege against self-incrimination did not add critical weight to the prosecution's case."  Doc. 7-3, *OCCA Op.*, at 7; *see Namet*, 373 U.S. at 186-87 (discussing two theories that may support reversible error grounded on introduction of witness's claim of Fifth Amendment privilege).  The OCCA therefore concluded that the trial court's comments were "not plain error as [they] did not affect the outcome of the proceeding."

*Id.*

Petitioner's argument as to the OCCA's decision on this claim is not clear.  He states, "Title 12 O.S. 2011, § 2513 specifically Barred comments on witness invoking right of privilege to remain silent.  This Court should have taken Judicial Notice of Adjudicative Facts. The Court Abused its discretion violating statutory right and rendering the Trial fundamentally unfair under *Brecht v. Abrahamson* that error had substantial and injurious effect on influencing the Jury's verdict of guilty."  Doc. 1, *Petition*, at 7-8.

Nonetheless, it is clear that § 2254(d) bars relief on this claim.  By applying *Namet*, the OCCA identified the legal principle governing Petitioner's claim.  In *Namet*, the United States Supreme Court explained that reversible error is not "invariably committed whenever a witness claims his privilege not to answer."  373 U.S. at 186.  Instead, courts must consider the "surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error."  *Id.*  Reversible error may occur when (1) "the Government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of testimonial privilege," or (2) when the "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudice the defendant."  *Namet*, *373* U.S. at 186-87.  Because the OCCA applied *Namet*, the sole question for this Court is whether the OCCA's application of *Namet* was unreasonable.  *See Simpson v. Carpenter*, 912 F.3d 542, 563 (10th Cir. 2018) ("A state-court decision is an 'unreasonable application' of Supreme Court law if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" (quoting *Terry Williams*, 529 U.S. at 407-08)).  Petitioner does not identify, and the Court does not discern from the record, any basis for finding that it was.

The record reflects that Mother testified at Petitioner's preliminary hearing but responded to several questions by invoking her Fifth Amendment right against self-incrimination.  Doc. 8-1, *Tr. Prelim. Hr'g*, at 39, 43-46, 59-60.  At trial, but "[b]efore the defense called [Mother] the trial court was informed that she had been charged with child neglect and if called as a witness would refuse to testify invoking her Fifth Amendment right against self-incrimination."  Doc. 7-3, *OCCA Op.*, at 5; Doc. 8-3, *Tr. Trial vol. 2*, at 176.  Outside the jury's presence, the trial court found that Mother was unavailable as a witness and granted defense counsel's request to introduce Mother's testimony from the preliminary hearing.  Doc. 8-3, *Tr. Trial vol. 2*, at 176.  Defense counsel and the prosecutor then advised the trial court of several redactions they agreed to make to the preliminary hearing transcript, largely to avoid introducing Mother's statements from the preliminary hearing invoking her Fifth Amendment rights.  *Id.* at 177-86.  Nevertheless, when jury returned to the courtroom, the trial court announced that Mother was subpoenaed by both parties in the case, that she was housed "in the county jail on some charges," and that she was "refusing to testify in this particular case.  She has—which is her right to do."  *Id.* at 188.  The trial court further explained that because Mother was unavailable, her preliminary hearing testimony would be presented at trial.  *Id.*  Petitioner did not object to the trial court's comments regarding Mother's refusal to testify.  *Id.* at 187-88.

Petitioner argued, on direct appeal, that the prosecutor attempted to capitalize on Mother's refusal to testify during closing arguments.  Doc. 7-1, *Pet'r App. Br.*, at 14-15.  But, as Respondent contends, the prosecutor did not mention Mother's refusal to testify; rather, the prosecutor referred to evidence about Mother that was presented through the testimony of other witnesses.  *See* Doc. 7, *Response*, at 16 (discussing evidence).  This evidence may not have been favorable to Petitioner, but that does not mean that the State impermissibly relied on Mother's refusal to testify to build

its case.  Rather, as the OCCA reasoned, this case involved the trial court's statement alluding to

Mother's invocation of her Fifth Amendment privilege and the State's cooperation with defense

counsel in redacting the preliminary hearing transcript to avoid additional references to Mother's

refusal to testify.  Doc. 7-3, *OCCA Op.*, at 7; *see* Doc. 8-3, *Tr. Trial vol. 2*, at 177-87.  Accordingly,

neither Petitioner's arguments nor this Court's independent review of the trial record supports a

finding that the OCCA's decision on this claim is based on an unreasonable application of *Namet*

or an unreasonable determination of the facts presented in state court.  Thus, § 2254(d) bars habeas

relief, and the Court denies the petition as to ground two.

**III.     Ground three:  prosecutorial misconduct during closing arguments**

Petitioner alleges prosecutorial misconduct during closing arguments deprived him of a

fair trial.  Doc. 1, *Petition*, at 9; Doc. 7-1, *Pet'r App. Br.*, at 16-20.  He specifically alleges the

prosecutor (1) improperly vouched for C.N.'s credibility and (2) improperly expressed his personal

opinion of the evidence and Petitioner's guilt.  Doc. 7-1, *Pet'r App. Br.*, at 16-20.

Petitioner did not object at trial to the prosecutor's remarks, and the OCCA reviewed his

prosecutorial-misconduct claim for plain error.   Citing state law, the OCCA stated that

prosecutorial misconduct requires reversal "only when the misconduct effectively deprived the

defendant of a fair trial or a fair and reliable sentencing proceeding" based on an evaluation of "the

prosecutor's comments within the context of the entire trial."  Doc. 7-3, *OCCA Op.*, at 8.  The

OCCA rejected Petitioner's argument that the prosecutor impermissibly vouched for C.N.'s

credibility, stating,

> During direct examination, when asked what part of [Petitioner's] body touched a
> part of his body, C.N. testified that he did "not remember."  In closing argument,
> the prosecutor told the jury, "What did he say?  I don't remember.  I think you all
> can tell by looking at the little boy that he remembers, he just didn't want to say it
> to you all, to 12 strangers."  [Petitioner] complains on appeal that this statement
> improperly bolstered the witness' testimony and improperly vouched for his

credibility.

> The record shows, however, that after C.N. testified that he did not remember, the prosecutor reminded him that he had talked to others about what had happened and also reminded him that he needed to tell the truth even if it was difficult.  When the prosecutor asked the question again, C.N. responded, "It's disgusting."  C.N. then went on to testify that [Petitioner] put his "wiener" in both his mouth and his butt. The prosecutor's statements in closing argument that C.N. did remember but was embarrassed to say it to twelve strangers was neither improper bolstering nor vouching for the witness' credibility, but rather was proper comment on the evidence.

Doc. 7-3, *OCCA Op*., at 8-9.  As to Petitioner's allegation that the prosecutor improperly opined on the evidence, the OCCA acknowledged that "the prosecutor prefaced several statements with words like 'I think.'"  *Id.* at 9.  The OCCA did not condone this practice and explained that it would have been better "to use phrases like 'I submit' or 'the evidence shows.'"  *Id.*  But the OCCA reasoned that most of the prosecutor's comments were reasonable inferences from the evidence and, in light of the entire proceedings, "none can be found to have affected the outcome." *Id.*

In his habeas petition, Petitioner again refers to the need for this Court to apply the *Brecht* analysis and states the "Prosecutorial misconduct considered Cumulative with other errors rise to a level of plain error."  Doc. 1, *Petition*, at 9.  Again, while Petitioner's argument is not clear, the Court finds that § 2254(d) clearly bars habeas relief.  The standard the OCCA applied in analyzing Petitioner's prosecutorial-misconduct claim mirrors the applicable federal standard.  In *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), the United States Supreme Court held that the fundamental-fairness analysis applies when a habeas petitioner asserts a prosecutorial-misconduct claim that does not involve an alleged violation of a "specific right" and explained that the reviewing court must consider whether, in light of the "entire proceedings," the challenged remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See also Duckett*, 306 F.3d at 988 (citing *DeChristoforo* and stating, "Ordinarily, a prosecutor's

misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process."). As a result, the question for this Court is whether the OCCA unreasonably applied *DeChristoforo* or unreasonably determined the facts when it rejected Petitioner's prosecutorial-misconduct claim. On review of the state court proceedings, the Court finds that neither the OCCA's determination of the facts relating to the prosecutor's challenged remarks nor its application of *DeChristoforo* is objectively unreasonable. Section 2254(d) therefore bars habeas relief, and the Court denies the petition as to ground three.

## IV. Ground four: admission of other-crimes evidence

Petitioner claims the trial court deprived him of a fair trial when it allowed the State to introduce evidence of "other crimes," evidence that Petitioner contends should have been excluded under Okla. Stat. tit. 12, § 2404(B). Doc. 1, *Petition*, at 11; Doc. 7-1, *Pet'r App. Br.*, at 21-23. At trial, C.N. testified that Petitioner "would sneak stuff like candy" from the grocery store. Doc. 8-3, *Tr. Trial vol. 2*, at 55. The jury also heard C.N. tell the forensic interviewer that Petitioner once gave C.N. a bottle of beer. *See* Doc. 7-1, *Pet'r App. Br.*, at 22 (citing State's Exhibit 6). Cousin testified that C.N. made his first disclosure to her after C.N. told Cousin that he had seen Petitioner smack Mother on the face and place his hand in Mother's pants when Mother was passed out on the floor. Doc. 8-3, *Tr. Trial. vol. 2*, at 63. Cousin also testified that C.N. made the second disclosure to her after C.N. confirmed with Cousin that Petitioner was in jail. *Id.* at 65.

On direct appeal, Petitioner argued that the trial court should have excluded evidence that he stole candy, gave C.N. a beer, slapped and fondled Mother, and was in jail, as inadmissible under Okla. Stat. tit. 12, § 2404(B) and as more prejudicial than probative under Okla. Stat. tit. 12, § 2403. Doc. 7-1, *Pet'r App. Br.*, at 21-23. Section 2404(B) provides that "[e]vidence of other

crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but may "be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Okla. Stat. tit. 12, § 2404(B). Section 2403 provides, in part, that relevant and admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Okla. Stat. tit. 12, § 2403.

Applying these rules of evidence, the OCCA rejected Petitioner's arguments. Because Petitioner did not object when the evidence was introduced at trial, the OCCA applied its plain-error test. Doc. 7-3, *OCCA Op*., at 10-12. After discussing the context surrounding the admission of the other-crimes evidence, the OCCA concluded that "[t]he challenged evidence was directly connected to the factual circumstances of the crime and provided necessary contextual and background information to the jury." *Id.* at 11-12. The OCCA further concluded that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice." *Id.* at 12. Thus, it found "no error in the admission of the evidence at issue" and denied Petitioner's claim. *Id.*

In this action, Petitioner asks this Court to review this claim under *Brecht*, contends the admission of other-crimes evidence "considered in the cumulative rises to a level of plain error," and further contends that "[t]he district court abused its discretion." Doc. 1, *Petition*, at 11. Even liberally construed, these contentions fail to address the fact that the OCCA applied the federal due-process standard when it applied its own plain-error test to analyze his claim. *See Thornburg*, 422 F.3d at 1125. Petitioner's contentions also fail to suggest any possible bases from which this Court could find that the OCCA's application of the federal due-process standard to the facts of Petitioner's case was objectively unreasonable. And the Court's independent review of the record

reveals no bases for making that finding.  As the OCCA reasoned, C.N.'s isolated comment about Petitioner's theft of candy was elicited by defense counsel, C.N.'s statement that Petitioner gave him a beer "was inextricably intertwined with the sexual abuse as it showed [Petitioner's] attempt to create an atmosphere of secrecy with C.N.," and Cousin's challenged testimony provided context for C.N.'s disclosures to Cousin.  Doc. 7-3, *OCCA Op*., at 11-12.  On the record presented, the Court therefore finds that § 2254(d) bars relief and denies the petition as to ground four.

## V.      Ground five:  prejudicial witness statement

Petitioner separately claims that he was deprived of a fair trial because Cousin's statement that he was in jail should have been excluded under Okla. Stat. tit. 12, § 2403 as more prejudicial than probative.  Doc. 1, *Petition*, at 12; Doc. 7-1, *Pet'r App. Br*., at 24-25.

On direct appeal, Petitioner argued that Cousin's statement suggested that he was dangerous and had the same effect as if the jury had seen Petitioner in handcuffs.  Doc. 7-1, *Pet'r App. Br*., at 24-25. The OCCA disagreed.  It reasoned that the evidence was relevant to explain why C.N. disclosed further sexual abuse on a second occasion, and determined that this challenged evidence was more probative than prejudicial.  Doc. 7-3, *OCCA Op*., at 12-13.

In his habeas petition, Petitioner contends that the OCCA's "adjudication was contrary to or involved an unreasonable application of clearly establish[ed] Federal law as determined by the Supreme Court in *Brecht*," and that "[t]his error asserted in the cumulative analysis rises to a level of plain error and rendering the trial fundamentally unfair based on Propositions One through Nine."  Doc. 1, *Petition*, at 12.  Petitioner's contentions provide no support for granting habeas relief.  As previously stated, *Brecht* has no role in this Court's analysis unless this Court (1) finds it appropriate to review Petitioner's claim de novo, rather than under the strictures of § 2254(d), and (2) finds an error of constitutional magnitude.  Petitioner's ground five claim alleges a state-

law evidentiary error that the OCCA reasonably determined was no error at all.  Section 2254(d)

thus bars relief on this claim, and the Court denies the petition as to ground five.

## VI.    Ground six:  failure to hold hearing required by Okla. Stat. tit. 12, § 2803.1

Petitioner claims he was deprived of a fair trial because the trial court admitted C.N.'s

hearsay statements without first conducting a pretrial hearing, as required under Okla. Stat. tit. 12,

§ 2803.1, to determine whether those statements were reliable and admissible.  Doc. 1, *Petition*, at

13; Doc. 7-1, *Pet'r App. Br.*, at 26-31.

The OCCA rejected Petitioner's claim.  Doc. 7-3, *OCCA Op.*, at 13.  It noted that section

2803.1 requires a hearing, but further noted that the failure to hold a hearing is subject to harmless-

error review.  *Id.* at 13 (citing *Simpson v. State*, 876 P.2d 690 (Okla. Crim. App. 1994).  The OCCA

then stated,

> [S]ection 2803.1 requires that the trial court hold a hearing outside the presence of
> the jury in which the trial court determines whether the time, content and
> circumstances of the statement provide sufficient indicia of reliability to establish
> the trustworthiness of the statement.  Furthermore, the child must testify at trial or
> be declared unavailable as a witness.  The safeguards of the statute protect not only
> the trustworthiness of the statement, but also a defendant's right to cross-
> examination.  [Petitioner] argues that C.N.'s hearsay statements did not meet the
> section 2803.1 criteria for admissibility because he disclosed the sexual abuse after
> being asked if he had been touched inappropriately and he gave differing accounts
> of what had happened.  The fact that C.N. first disclosed that he had been sexually
> abused by [Petitioner] in response to a question does not render the hearsay
> untrustworthy.   The record shows that C.N.'s accounts of abuse were never
> materially inconsistent or unbelievable.  Furthermore, C.N. testified at trial and was
> subject to cross-examination.  Accordingly, we find that the record demonstrates
> that the hearsay statements met the test of trustworthiness required by statute and
> that the failure to hold a hearing as required by section 2803.1 did not seriously
> affect the fairness, integrity, or public reputation of the proceedings.  The failure to
> hold the section 2803.1 hearing was harmless beyond a reasonable doubt as it did
> not affect Morrison's substantial rights or the outcome of the proceeding.
> Admission of the statements, therefore, does not constitute reversible error.

Doc. 7-3, *OCCA Op.*, at 14.

In his petition, Petitioner asserts that the OCCA's decision "was contrary to or involved an

unreasonable application of Supreme Court Precedent" and appears, once again, to identify that precedent as *Brecht*.  Doc. 1, *Petition*, at 13.  He also contends that this error supports his claim that cumulative trial errors deprived him of a fair trial.  *Id.*

For reasons previously discussed, *Brecht* is not the relevant Supreme Court precedent.  And nothing in the record supports Petitioner's assertion that the OCCA's decision is either contrary to, or an unreasonable application of, controlling federal law.  The United States Court of Appeals for the Tenth Circuit discussed the controlling federal law in *Hamburger v. Allbaugh*, 679 F. App'x 665, 667 (10th Cir. 2017) (unpublished),[9] stating,

> The Supreme Court has identified several factors relevant in determining whether a child victim's interview is sufficiently reliable. *Idaho v. Wright*, 497 U.S. 805, 821-22 (1990) (identifying "spontaneity and consistent repetition," "mental state of the declarant," "use of terminology unexpected of a child of similar age," and "lack of motive to fabricate"), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 68-69 (2004).

As Respondent states, "the factors set forth in Okla. Stat. tit. 12, § 2803.1 are those identified by the Supreme Court" in *Wright*.  Doc. 7, *Response*, at 26.  Here, even though the trial court did not hold a pretrial hearing to consider those factors, the OCCA considered those factors on direct appeal and found C.N.'s statements "met the test of trustworthiness required by statute."  Doc. 7-3, *OCCA Op.*, at 14.  Nothing in the habeas petition suggests the OCCA's application of the *Wright* considerations was objectively unreasonable.  Notably, *Wright* explained "that 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances, but . . . the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief."  497 U.S. at 819.  On direct appeal, Petitioner argued, in part, that C.N.'s disclosures to Cousin were suspect.  Doc. 7-1, *Pet'r App. Br.*, at 26-31.

---

[9] The Court cites this unpublished opinion as persuasive authority.  *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

But, as the OCCA reasoned, the fact that Cousin asked C.N. if Petitioner touched him inappropriately before C.N. made his first disclosure did not render C.N.'s statements to Cousin untrustworthy.  Doc. 7-3, *OCCA Op.*, at 14.  Cousin did not ask that question out of the blue; rather, she asked after C.N. told her that Petitioner touched Mother inappropriately in front of C.N. and L.N.  Doc. 8-3, *Tr. Trial vol. 2*, at 63-64.

And it does not appear that Petitioner seriously challenged the reliability of the statements C.N. made during two separate forensic interviews at the Ray of Hope.  *See* Doc. 7-1, *Pet'r App. Br.*, at 26-31.  Instead, he primarily cited inconsistencies between those statements and C.N.'s trial testimony and between C.N.'s testimony and the testimony of other witnesses.  *Id.*  But, as previously stated, *Wright*'s focus is on the circumstances surrounding the statement at issue.  497 U.S. at 819.  Petitioner's complaints about inconsistent statements challenge the weight and credibility of C.N.'s statements, and both were matters for the jury to decide.  *See Kitchens v. Bryan Cty. Nat. Bank*, 825 F.2d 248, 251 (10th Cir. 1987) ("The jury, moreover, has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.").  Accordingly, the Court finds the OCCA's application of *Wright* was objectively reasonable, and § 2254(d) thus bars relief.

Moreover, as Respondent points out, the OCCA reviewed this claim for plain-error because Petitioner did not object to the lack of a reliability hearing.  Doc. 7, *Response*, at 29; *see also* Doc. 8-6, *Orig. Rec.*, at 59-60 (State's amended notice of intent to offer hearsay statements and request for a hearing); *id.* at 101 (trial court's order allowing admission of C.N.'s hearsay statements and noting Petitioner's lack of objection to the admission of these statements).  On plain-error review, the OCCA found the trial court's failure to hold a pretrial hearing "did not seriously affect the

20

fairness, integrity, or public reputation of the proceedings and "was harmless beyond a reasonable doubt as it did not affect [Petitioner's] substantial rights or the outcome of the proceeding."  Doc. 7-3, *OCCA Op.*, at 14.  Because the OCCA applied its plain-error test, Petitioner must show that the application of that test was objectively unreasonable.  *Thornburg*, 422 F.3d at 1125.  Having reviewed the state-court record, the Court finds nothing objectively unreasonable about the OCCA's determination that, under the particular facts of this case, the failure to hold a reliability hearing did not deprive Petitioner of a fair trial.  As the OCCA reasoned, C.N. testified at trial about Petitioner's actions, *see* Doc. 8-3, *Tr. Trial vol. 2*, at 32-34, C.N.'s testimony was not materially inconsistent with his statements to Cousin and the forensic interviewer, *see id.*, at 62-67 and State's Exhibit 6, and C.N. was subject to extensive cross-examination, *id.* at 39-61.  Doc. 7-3, *OCCA Op.*, at 14.  On this record, the Court finds the OCCA's application of the federal due-process standard was objectively reasonable and that § 2254(d) therefore bars relief.

Based on the foregoing, the Court denies the petition as to ground six.

## VII.    Ground seven:  sufficiency of the evidence

Petitioner claims the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt.  Doc. 1, *Petition*, at 14; Doc. 7-1, *Pet'r App. Br.*, at 32-43.  Petitioner's challenge to the sufficiency of the evidence appears to rest primarily on what he claims are inconsistencies and contradictions between C.N.'s testimony and the testimony of other witnesses. Doc. 7-1, *Pet'r App. Br.*, at 32-43.

The OCCA considered and rejected Petitioner's challenge to the sufficiency of the evidence.  In doing so, the OCCA stated that it "reviews challenges to the sufficiency of the evidence in the light most favorable to the State and will not disturb the verdict if any rational trier of fact could have found the essential elements of the crime charged to exist beyond a reasonable

doubt."  Doc. 7-3, *OCCA Op*., at 14-15 (citing *Head v. State*, 146 P.3d 1141, 1144 (Okla. Crim.

App. 2006) and *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985)).  Applying that

standard, the OCCA stated,

> [Petitioner] characterizes C.N.'s testimony as "confusing, contradictory and
> sometimes unlikely" and argues that it was insufficient to support his conviction[s].
> We disagree.  While C.N. was clearly hesitant to testify about the abuse he suffered,
> his testimony was neither confusing nor "unlikely."  His accounts of the material
> details of the abuse were largely consistent.  We find that, when viewed in a light
> most favorable to the defense, the jury could have found each element of the
> charged crimes to exist beyond a reasonable doubt.  There was no error here.

Doc. 7-3, *OCCA Op*., at 15.

In this action, Petitioner contends the OCCA's decision "involved an unreasonable

application of" *Brecht* and, when considered with other trial errors, deprived him of a fair trial.

Doc. 1, *Petition*, at 14.  Again, these contentions do not support Petitioner's request for habeas

relief.  Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot

be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element

of the crime charged.  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358,

364 (1970).  *Jackson*, not *Brecht*, supplies the clearly established legal rule governing Petitioner's

sufficiency-of-the-evidence claim.  *See Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007)

(identifying *Jackson* as constitutional standard for reviewing state habeas petitioner's sufficiency-

of-the-evidence claim).  And, under *Jackson*, "the relevant question is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319.  The OCCA

adopted the *Jackson* standard in *Spuehler*, and the OCCA applied that standard here.  Doc. 7-3,

*OCCA Op.*, at 14-15.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to

two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Id.* (internal citations omitted) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)); *see also id.* at 656 ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."); *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (noting that *Jackson* "standard requires [reviewing court] to accept the jury's resolution of the evidence as long as it is within the bounds of reason"). In applying the *Jackson* standard on federal habeas review, the Court looks to state law to determine the substantive elements of the crime. *Johnson*, 566 U.S. at 655. "[B]ut the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Id.*

At trial, the State had to prove, beyond a reasonable doubt, as to Count 1: that Petitioner knowingly and intentionally looked upon or touched the body or private parts of C.N. in a lewd or lascivious manner, *see* Instruction No. 4-129, Oklahoma Uniform Jury Instruction (OUJI)-CR (2d) (2014); as to Count 3: that Petitioner engaged in sexual intercourse with a person who was not his spouse when Petitioner was over the age of 18 and the victim was under the age of 14, *see* Instruction No. 4-120, OUJI-CR (2d) (2014); and as to Count 4: that Petitioner penetrated the mouth of the victim with the penis of Petitioner when Petitioner was over the age of 18 and the victim was under the age of 16, *see* Instruction No. 4-128, OUJI-CR (2d) (2014).

This Court has carefully reviewed the trial record. Viewing the evidence presented at trial in the light most favorable to the prosecution and giving proper deference to the jury's finding of guilt and the OCCA's rejection of Petitioner's sufficiency challenge on direct appeal, the Court

finds that the jury's verdict was well within the bounds of reason and that the OCCA's decision

regarding the sufficiency of the evidence was objectively reasonable.  As a result, § 2254(d) bars

relief, and the Court denies the petition as to ground seven.

## VIII.   Ground eight:  admission of information about pardon and parole

Petitioner claims his sentence should be modified because, during the sentencing stage of

Petitioner's bifurcated jury trial, the prosecutor improperly referred to the fact that a portion of the

sentence he received for his prior felony conviction of lewd or indecent proposal to a child under

16 had been suspended.  Doc. 1, *Petition*, at 15; Doc. 7-1, *Pet'r App. Br.*, at 44-47.

On direct appeal, Petitioner argued this "mistake by the prosecutor" required modification

of his sentence.  Doc. 7-1, *Pet'r App. Br.*, at 46-47.  The OCCA rejected this claim on plain-error

review.  The OCCA explained that, under Oklahoma law, "references to probation and parole,

including suspended sentences, should not be submitted to the jury."  Doc. 7-3, *OCCA Op.*, at 15-

16 (citing *Hunter v. State*, 208 P.3d 931, 933 (Okla. Crim. App. 2009), *overruled by Terrell v.*

*State*, 425 P.3d 399, 401 (Okla. Crim. App. 2018)).  The OCCA further explained that, "[i]n

*Hunter*, [the OCCA] found that it is error for jurors to learn that a defendant received a suspended

sentence because it allows for speculation about probation and parole policies and such

information may adversely influence the defendant's sentence."[10]  *Id.* at 16.   But the OCCA found

the facts of Petitioner's case were distinguishable from those in *Hunter*, and did not support a

finding of plain error because "[a]s [Petitioner] acknowledge[d], upon finding that the State had

---

[10]  In *Terrell*, the OCCA concluded that the rule it announced in *Hunter* was "simply unworkable" and held that "[j]urors are free to consider the relevant proof of a prior conviction including any evidence that a defendant previously received probation, suspension, or deferral of a sentence and any acceleration or revocation of such a sentence."  *Terrell*, 425 P.3d at 401.  Thus, while the OCCA found "actual error" in Petitioner's case, *see* Doc. 7-3, *OCCA Op.*, at 16, current Oklahoma law would not support such a finding.

proved his prior felony conviction beyond a reasonable doubt the jury only had one sentencing option; the only possible punishment on each count was life without the possibility of parole." *Id.* Thus, the OCCA concluded, while Petitioner established "actual error," he failed to show the "error adversely affected his sentence" and thus failed to establish plain error. *Id.*

Petitioner asserts that the OCCA's decision is contrary to, or an unreasonable application of *Brecht* and further asserts that this error, along with all other trial errors alleged, rendered his trial fundamentally unfair. Doc. 1, *Petition*, at 15. For the reasons previously discussed, these contentions lack merit. Instead, because the OCCA applied plain-error review, the Court need only decide whether the OCCA's application of the federal due-process standard was objectively reasonable. *Thornburg*, 422 F.3d at 1125. Significantly, Petitioner acknowledged on direct appeal that the jury was required to impose a sentence of life without parole for each conviction and that the "mistake by the prosecutor had no effect on the sentence[s]" he received. Doc. 7-1, *Pet'r App. Br.*, at 46. Under these circumstances, the Court finds the OCCA's application of the due-process standard was objectively reasonable. Thus, § 2254 bars relief, and the Court denies the petition as to ground eight.

## IX.     Ground nine:  cumulative trial errors

Finally, Petitioner claims the cumulative effect of the trial errors alleged in grounds one through nine deprived him of a fair trial. Doc. 1, *Petition*, at 16; Doc. 7-1, *Pet'r App. Br.* at 48-49. The OCCA rejected this claim, concluding there were "no errors, considered individually or cumulatively, that merit relief in this case." Doc. 7-3, *OCCA Op.*, at 17.

The Court agrees. "[I]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."

*Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010) (brackets and internal quotation marks omitted) (quoting *Brown v. Sirmons*, 515 F.3d 1072, 1097 (10th Cir. 2008)).  But a cumulative-error analysis is warranted "only if there are at least two errors."  *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013) (quoting *Hooks v. Workman*, 689 F.3d 1148, 1194-95 (10th Cir. 2012)).  In analyzing the errors alleged in grounds one through eight, the Court found no constitutional errors.  As a result, Petitioner is not entitled to habeas relief on his cumulative-error claim, and the Court denies the petition as to ground nine.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that no evidentiary hearing is necessary to resolve the claims asserted in the petition and that Petitioner has not shown that he is in custody, pursuant to the challenged state-court judgment, in violation of his rights under the United States Constitution.  The Court therefore denies his petition for writ of habeas corpus.  The Court further concludes that Petitioner has not made the showings necessary to obtain a certificate of appealability as to any claims he asserts in the petition and the Court therefore declines to issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Luke Pettigrew in place of Carl Bear as party respondent.

2. Petitioner's request for an evidentiary hearing is **denied**.

3. The petition for writ of habeas corpus (Doc. 1) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

ORDERED this 1st day of May, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT